IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                          )<br>)<br>ARTHUR DEMERILL SANTIFUL,     )<br>)<br>Defendant.                         ) | Criminal No. 2:15cr160 |

RESPONSE OF THE UNITED STATES IN OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS

The United States of America, by its attorneys, Dana J. Boente, United States Attorney for the Eastern District of Virginia, John F. Butler, Special Assistant United States Attorney, and Joseph E. DePadilla and Andrew C. Bosse, Assistant United States Attorneys, respectfully submits this response to Defendant's Motion to Suppress with Memorandum of Law (the "Motion"). For the reasons stated below, the government respectfully submits that the Motion should be denied.

**I.    BACKGROUND**

Virginia Beach Police Department officers responded to an armed robbery in progress at a 7-Eleven convenience store in the early morning hours of September 30, 2015. Two suspects left the 7-Eleven and one, Michael Zeigler, was stopped by a police dog and arrested. The other, defendant, Arthur Santiful, eluded authorities by hiding in a garage and covering himself with gasoline to throw the police dog off of his scent. Later that day the defendant returned to a motel room he was using, where he was caught and arrested.

Just after midnight on October 1, 2015, the defendant was placed in an interview room at the Norfolk Police Operations Center. Norfolk Detective Dooley ("JD" in the transcript quotations below) and Virginia Beach Detective Adamick started the interview, which was video

and audio recorded, by advising the defendant of his legal rights with a pre-printed PD 381 "Legal Rights Advice Form." That form included each of the *Miranda* warnings. ECF Doc. 47-1 Defense Exhibit C. Before reviewing the *Miranda* rights with the defendant, Detective Dooley asked him about his previous arrests and whether he had ever had his rights read to him before, to which the defendant replied, "Yeah, yeah, yeah." The defendant then stated that he had never had his rights read "on paper." The detective proceeded to review the rights form with the defendant, pausing after each question to confirm that the defendant understood the particular right he had just read. When the defendant came to the portion of the advice form on the right to counsel, the following exchange[1] occurred:

> Def: You understand you have the right to talk to a lawyer and have a lawyer present during all questioning if you desire.
>
> JD: Any questions about that?
>
> Def.: (Unintelligible ("UI")) lawyer here (UI)
>
> JD: Say again?
>
> Def.: Gotta lawyer here right now?
>
> JD: You want one here right now? Well, we don't have one here right now for you. I mean, it's not like we have just a room full of lawyers waiting.
>
> Def.: Well, why is that an option?
>
> JD: Well, 'cause here's what happens, what that means is if you don't want to talk to us now, we can come back a different day when you have a lawyer and we'll set up a meeting.
>
> Def.: Um.
>
> JD: But if you wanna talk to us now, we can. You can talk now to us and figure out what's going on, why you're here and we can go on. If you wanna speak to a lawyer, then we're gonna um, you know, then our interview's pretty much done if you wanna talk to your lawyer. It's up to you though. You wanna continue or do you wanna um, what's up?

---

[1] This portion of the transcript was reviewed and approved by Norfolk Detective Jason Dooley.

Def.: Nah, I'll wait it out.

JD: You gonna wait it out?

Def.: Umm hmm.

JD: So you don't want your, you don't want an attorney right now?

Def.: No.

The detective then proceeded through the remainder of the form, and the defendant said that he understood each of the other rights that were discussed. The detective went further to make sure the defendant understood he could have an attorney present for any questions:

JD: OK, all that means is when … all that means is that you wish to talk to us, all it's saying, if I ask you what you were doing yesterday, if I asked you what you're doing last year, if I ask you what you're doing, what's your favorite color, pretty much when you say ah, I was here last night, I did this ten years ago, my favorite color is purple, that's … you're waiving your right and you're answering our question. You don't ever waive your rights completely, you can never waive your rights, you can say I don't want to answer that, I wanna stop the interview, I wanna talk to my lawyer right now, I don't wanna talk to you guys any longer, that's what that means, OK? So pretty much (UI) I waive these rights and desire to make a statement, all that mean, we're not gonna take a statement, we're not gonna take a statement written, we're not gonna take a recorded statement, all it means is that we're gonna have an interview here, we're gonna talk to you, you know, and ask you questions and if you don't want to answer the questions, you don't have to answer the questions. If you want your attorney, you can have your attorney. If you want to stop the interview, you can stop the interview. If you wanna talk to us, you can talk to us, that's all that means. OK? So you wanna continue?

Def.: Yeah.

JD: Ok, just write the word yes and your initials next to that, and this is nothing more (UI) your legal rights, that's all it is. You're not, this is not a contract where you have to do anything, OK?

Def.: What do ya'll have?

JD: Well, here's … you don't want to go through any more of these legal rights thing?

3

Def.: Nmm mmm.

In addition to their initial delivery by Detective Dooley, the defendant's *Miranda* rights were referenced by three additional detectives during their interview of the defendant that morning. In each case, the defendant continued to speak with detectives without invoking his right to counsel.

Following Detective Dooley's review of the defendant's *Miranda* rights, the defendant confessed not only to the armed robberies described in the indictment, but to more than a dozen other robberies and multiple house break-ins throughout Hampton Roads. The defendant admitted to being involved in a robbery during which shots were fired at a pizza delivery man, to pistol-whipping a clerk, and to robberies of over a dozen 7-Eleven stores, two hotels, two gas stations, and to multiple break-ins including one at a Wal-Mart on Christmas. *See* Exhibit A (transcript of the interview).

When confronted about what had happened the previous night at a 7-Eleven in Norfolk, the defendant replied, "There was a frickin' robbery, man." Detective Adamek asked, "Who was it? You and ah, Michael?" and the defendant replied, "Umm hmm." The defendant then admitted going straight to the Virginia Beach 7-Eleven on Euclid Avenue with a gun to commit the next armed robbery.

## II. ARGUMENT

### A. THE DEFENDANT WAS PROPERLY ADVISED OF HIS *MIRANDA* RIGHTS AND DID NOT UNEQUIVOCALLY INVOKE HIS RIGHT TO COUNSEL

#### 1. LEGAL STANDARD

*Miranda* warnings are required when a subject is interrogated while in custody. *Miranda v. Arizona*, 384 U.S. 436 (1966); *accord Dickerson v. United States*, 530 U.S. 428, 444 (2000) (reaffirming *Miranda* as "a constitutional rule that Congress may not supersede legislatively.")

Once given the warnings, a subject may nevertheless waive his rights and voluntarily submit to custodial interrogation. To be valid, the waiver "need not be explicit, but may be inferred from all the circumstances." *United States v. Hicks*, 748 F.2d 854, 859 (4th Cir. 1984); *see also United States v. Cardwell*, 433 F.3d 378, 389-90 (4th Cir. 2005) (finding "implied waiver" in defendant's willingness to answer questions after being advised of rights), *cert. denied*, *Hinson v. United States*, 547 U.S. 1061 (2006).

Whether a suspect has invoked the right to counsel is an objective inquiry. *Davis v. United States*, 512 U.S. 452, 458-59 (1994). A request for counsel need not be a model of eloquence and clarity to qualify as an unequivocal invocation. *Id.* at 459. However, "[i]nvocation of the *Miranda* right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Id.* (internal quotation omitted). "If a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.*

The burden of proof is on the party who seeks to suppress evidence. *United States v. Dickerson,* 655 F.2d 559, 561 (4th Cir.1981). "Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence." *United States v. Hunter*, 63 F. Supp. 3d 614, 619 (E.D. Va. 2014); *see United States v. Freeman*, 61 F. Supp. 3d 534, 536 (E.D. Va. 2014) (same); *see also United States v. Matlock,* 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

2. THE DEFENDANT WAS ADVISED OF HIS *MIRANDA* RIGHTS AND DID NOT UNEQUIVOCALLY INVOKE HIS RIGHT TO COUNSEL

The defendant was properly advised of his *Miranda* rights before he was interrogated. He made a knowingly and voluntary waiver before submitting to interrogation, and he never unequivocally invoked his right to counsel. He now asserts that the statement that Detective Dooley did not understand and asked him to clarify ("Say again?"), which is transcribed above as "(UI) lawyer here (UI)," and which the Court can view and listen to on the video recording, was actually the statement, "I want a lawyer. I want one here right now." It is the defendant's burden to prove that that is what he said. But even if he can prove that, the question is whether a reasonable police officer in the circumstances would have understood what he said to be a request for a lawyer. The government submits that the video recording is indisputable evidence that a reasonable police officer would not have understood the defendant's first statement as such. Under the law of this Circuit, the defendant did not at any point make the kind of unequivocal invocation that required Detective Dooley to end the interview. The communication between a defendant and the police that is the subject of a *Miranda* challenge is a two-way street. A defendant cannot *sub silentio* invoke his right to counsel, then, when asked to clarify his statement, agree to waive his right to counsel and continue with the interview, and then later move to have the entire interview suppressed because, unbeknownst to the interviewing officer, he had muttered an invocation.

That is the situation here. The defendant asserts that his initial unintelligible statement, which Detective Dooley did not understand at the time it was made, was an invocation of his right to counsel that should have ended the questioning. Even if the defendant can offer credible testimony that he said what he now claims to have said, he still would not meet his initial burden of establishing some basis for suppression. The question whether the defendant invoked his right

to counsel is an objective one, and the defendant must have "articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect." *Davis,* 512 U.S. at 458-59. Whatever it is the defendant said, intended to say, or in hindsight would have preferred to have said in that first statement, it is clear from the video recording that he did not articulate a desire to have counsel present such that a reasonable officer would understand that that was what he was doing. On hearing the defendant's unintelligible statement, which included the word "lawyer," Detective Dooley did exactly as he was supposed to do. He stopped to clarify what the defendant said in a good faith effort to simply understand him. The defendant then intelligibly asked whether there was a lawyer present ("Gotta lawyer here right now?"). At that point, the detective again did what he was supposed to do: he explained that the police did not have defense lawyers on standby and told the defendant that if he wanted to speak to a lawyer, the interview would be over. At each step of this portion of the conversation, the detective gave the defendant accurate information and carefully explained the defendant's rights to him. As the detective told him, "what that means is if you don't want to talk to us now, we can come back a different day when you have a lawyer, and we'll set up a meeting." Ex. A at 2. After these explanations and multiple opportunities to ask for counsel, the defendant agreed to continue the interview. The defendant never argues that any of the explanations the detective provided were inaccurate.

Even if the defendant could meet his initial burden of establishing a basis for suppression, the preponderance of the evidence shows that he did not invoke counsel so clearly as to require the police to end the interview. In *United States v. Johnson*, the Fourth Circuit held that by checking the answer "no" to a question on a waiver of rights form, "do you want to make a

7

statement at this time without a lawyer?", a defendant had invoked his right to counsel. 400 F.3d 187 (4th Cir. 2005). Here, to the contrary, defendant indicated on the written form that he was waiving his right to counsel. In coming to that conclusion, the *Johnson* Court outlined the kinds of statements that do and do not count as unequivocal invocations of counsel. It cited *Davis v. United States*, 512 U.S. 452, 459-62 (1994), in which the defendant's equivocal statements, including "Maybe I should talk to a lawyer," were held *not* to invoke the right to counsel. Other equivocal, insufficient statements or questions cited by the court in *Johnson* include: "I might want to talk to an attorney," *United States v. Zamora*, 222 F.3d 756, 765-66 (10th Cir. 2000); "I think I need a lawyer," *Burket v. Angelone*, 208 F.3d 172, 198 (4th Cir. 2000); "Do you think I need an attorney here?", *Mueller v. Angelone*, 181 F.3d 557, 573-74 (4th Cir. 1999); I "might want to get a lawyer then, huh?", *United States v. Posada-Rios*, 158 F.3d 832, 867 (5th Cir. 1998); "I think I want a lawyer," and "Do you think I need a lawyer?", *Diaz v. Senkowski*, 76 F.3d 61, 63-65 (2d Cir. 1996); "I can't afford a lawyer but is there any way I can get one," *Lord v. Duckworth*, 29 F.3d 1216, 1219-21 (7th Cir. 1994). *Johnson*, 400 F.3d at 195; *see also Hyatt v. Branker*, 569 F.3d 162 (4th Cir. 2009) (statement of defendant during custodial interrogation that his "daddy wanted him to call a lawyer" did not unequivocally express a desire for an attorney).

The defendant's statements here—or at least the portion that was intelligible, as shown on the video recording—were as or more equivocal than those statements cited in *Johnson* that were found not to invoke the right to counsel. The same analysis is true for a number of unreported cases from the Fourth Circuit. *See United States v. Smith*, 281 F. App'x 198, 200 (4th Cir. 2008) (finding that defendant did not unequivocally invoke his right to counsel by stating, "I think I might need to talk to a lawyer," and signing a waiver of rights after he made that statement); *United States v. Joyner*, 370 F. App'x 353 (4th Cir. 2007) (defendant did not clearly and

8

unambiguously invoke his right to counsel during custodial interrogation even though defendant replied, "Man, I'll talk to an attorney," in response to officers' question about whether cocaine base was his, and, after requesting that passengers in his car be let go, he stated, "I talk to my attorney, I'll figure this thing out they they straight," and "I get an attorney, when I get an attorney present. They innocent."); *United States v. Wheeler*, 84 F. App'x 304 (4th Cir. 2003) (finding defendant's comment that he "wanted to call his family to see about a lawyer" was not a clear invocation of his right to counsel.); *see also United States v. Hamidullin*, 114 F. Supp. 3d 288 (E.D. Va. 2015) (finding that defendant's statement that he first needed to speak with his "practitioner" before speaking with agents was, at most, an ambiguous invocation of right to counsel, in light of statements that defendant had made throughout interrogation conditioning his willingness to answer questions upon agents fulfilling certain demands that had nothing to do with his right to counsel); *United States v. Hicks*, 631 F. Supp. 2d 725 (E.D.N.C. 2009) (holding that defendant's statement, "I don't mind talking to you, but, I mean, I don't want to waive no rights," did not invoke his *Miranda* rights to an attorney or to remain silent).

    3. <u>THE DEFENDANT'S SECOND QUESTION ALSO WAS NOT AN UNEQUIVOCAL REQUEST FOR COUNSEL</u>

The defendant read aloud the right to counsel warnings straight from the Legal Rights Form and was asked if he had any questions about it. When asked to clarify his initial unintelligible response to the right to counsel warning, the defendant asked another question: "Gotta lawyer here right now?" This question is analogous to the statements cited as equivocal and insufficient in *Johnson*. Again, the question is whether the defendant's statement "articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 458-59. The defendant did not clearly express his desire for an attorney by

9

this second question, either. Instead, he asked whether there were lawyers present at the police station, perhaps because he thought that is what the printed form indicated ("Well, why is that an option?"). Ex. A at 2. The detective clarified that there were no lawyers at the police station, but explained that the defendant could "come back a different day when you have a lawyer and we'll set up a meeting." *Id*. Once he understood the situation, the defendant made clear, seconds later, that he did not want an attorney before speaking to the police:

> JD: But if you want to talk to us now, we can. You can talk now to us and figure out what's going on, why you're here and we can go on. If you want to speak to a lawyer, then we're gonna um, you know, then our interview's pretty much done if you want to talk to your lawyer. It's up to you though. You want to continue or do you want to um, what's up?
>
> Def.: Nah, I'll wait it out.
>
> JD: You gonna wait it out?
>
> Def.: Umm hmm.
>
> JD: So you don't want your, you don't want an attorney right now?
>
> Def.: No.

At no time did the defendant make an unequivocal assertion of his right to counsel. Once he understood what his options were, after they were accurately explained to him by the detective, he decided to make a statement to the police. He also wrote "Yes" and signed his initials under the question, "Do you understand that you have a right to talk to a lawyer and to have the lawyer present during all questioning, if you so desire?". ECF Doc. 47-1 Defense Exhibit C.

What the defendant said, and the clarifying conversation he had with the detective, fall well outside the line of those cases in which courts have held that there was a clear invocation. In *Smith v. Illinois*, 469 U.S. 91, 93 (1984), for example, the Court held that a defendant's statement, "Uh, yeah. I'd like to do that," in response to the question whether he understood that he had a right to counsel, was an invocation of that right. *See also Grueninger v. Director, Va.*

10

*Dept. of Corrections*, 813 F.3d 517, 529 (4th Cir. 2016) (finding the statement "These are felonies, I need an [a]ttorney," unequivocally invoked defendant's right to counsel during custodial interrogation); *United States v. Eligwe*, 456 F. App'x 196, 198 (4th Cir. 2011) (finding an unambiguous request when defendant stated he needed an attorney); *Abela v. Martin*, 380 F.3d 915, 919, 926-27 (6th Cir. 2004) (finding that defendant invoked his right to counsel by stating, "[M]aybe I should speak with an attorney by the name of William Evans" and proffering Evans' business card); *Kyger v. Carlton*, 146 F.3d 374, 376, 379 (6th Cir. 1998) (finding that the statement "I'd just as soon have an attorney [']cause, you know—ya'll say there's been a shooting involved and that's a serious charge" in response to "[W]ould you answer some of our questions, without an attorney present?" constituted an invocation of the right to counsel) (first alteration in original); *Alvarez v. Gomez*, 185 F.3d 995, 998 (9th Cir. 1999) (finding defendant's three questions, "Can I get an attorney right now, man?", "You can have attorney right now?", and "Well, like right now you got one?", constituted "an unequivocal request for an attorney").

The defendant contends that the *Alvarez* case is the most analogous to his. Putting aside that it is a non-binding Ninth Circuit opinion, and that the Fourth Circuit has not held such borderline statements to qualify, it is distinguishable. First, the defendant in *Alvarez* asks, "Can I *get* an attorney?" and in this case the defendant asks if an attorney is present. The first is arguably a request for an attorney, the second is a request for information. In *Alvarez*, the Ninth Circuit relied on a string of questions that, taken, together, it interpreted as a request for counsel. Here, after the unintelligible statement, there was only one question, and once it was asked, the detective carefully explained that while the police department did not have lawyers on standby, the defendant could get a lawyer if he wanted one, and that the interview would end if he chose to do so. Seconds later, the detective asked the defendant, "So you don't want your, you don't want an attorney right now?", to which the defendant replied, "No." After that, the detective

11

asked, "Do you have any questions about your legal rights?", to which the defendant replied, "Not yet." The detective continued to discuss the defendant's legal rights and finally asked, "So you want to continue?", to which the defendant replied, "Yeah." Whatever ambiguity existed at the moment the defendant made his second statement, to the extent there was any, it was cleared up by the end of the conversation. The defendant clearly indicated, verbally, that he did not want an attorney and that he wanted to continue with the interview. He indicated the same in writing, by signing the legal rights form. No such clarifying conversation took place and no such form was signed in *Alvarez*.

Additionally, the repeated *Miranda* warnings that the defendant received throughout the interview from both Norfolk Detective Gross and Portsmouth Detective Cornatzer further confirm that he understood his rights and agreed to speak without an attorney. His right to counsel was thoroughly addressed at the start of his interview and then reviewed at least two more times by two other detectives. At no time did the defendant tell the officers that he wanted a lawyer. At no time did he tell the officers that he did not understand his rights. Detective Dooley acted in good faith and provided simple, easy, and accurate explanations of the defendant's rights. The video clearly shows that the defendant told detectives he wanted to speak with them and did not ask for a lawyer before doing so. The officers are not mind readers. They should be allowed to rely on what they heard the defendant say and on the written form he executed, which is consistent with what they heard him say.

### B. WHEN EXPLAINING THE *MIRANDA* RIGHTS TO THE DEFENDANT, OFFICERS SAID NOTHING TO CONTRADICT THE SPIRIT AND LETTER OF *MIRANDA*

The defendant also argues that his statements were involuntary because the officers contradicted the *Miranda* warnings by telling him that his statements would not be used against him. While it is the government's burden to show that the defendant's statements were

voluntarily made, *see J.D.B. v. N. Carolina*, 564 U.S. 261, 269-70 (2011), what the defendant claims happened during the interrogation did not happen—officers never told the defendant that his statements would not be used against him. It is entirely proper for an agent to discuss potential cooperation with a defendant, and to promise to make known to the prosecutor the extent of a defendant's cooperation. *United States v. Shears*, 762 F.2d 397, 401-02 nn.2, 3 (4th Cir. 1985). Inculpatory statements need not be suppressed merely because a defendant was promised leniency—which he was not here—and now subjectively believes his confession was "involuntary." *Id.* 401-03; *see also United States v. Lewis*, 466 F. App'x 170, 173 (4th Cir. 2012) (holding that even though defendant felt pressure to confess in exchange for possible leniency, this pressure was internal and not the result of officer's actions, and thus did not lead to an involuntary statement). The defendant in this case is not arguing that officers made any threats or promises. Instead, he argues that numerous statements by detectives in his case were "not compatible" with and contradicted *Miranda.*

The defendant cites one Eleventh Circuit case as the basis for why his statements should not be considered voluntary. *Hart v. Attorney General of State of Florida*, 323 F.3d 884, 894 (11th Cir. 2003). The underlying facts of *Hart* are distinguishable. In that case, the detective told the defendant that signing the waiver form would "honestly not hurt him." *Id*. The Court in *Hart* held that the defendant's *Miranda* waiver was invalid because the agents actually contradicted the *Miranda* warning by telling the defendant his statements would not hurt him. *Id.*; *see also United States v. Beale*, 921 F.2d 1412 (11th Cir. 1991). Nothing about how the *Miranda* rights were explained to the defendant comes close to the situation in *Hart*.

The defendant cites eight different instances in which detectives tell the defendant that his cooperation will help him. ECF Doc. 47-1 Exhibit D. Many of the cited examples do not provide the court with the full context of that portion of the conversation, but what is clear from

13

the full transcript is that any reference to cooperation by the detectives was not made in connection with the explanation of the defendant's *Miranda* rights.

"A statement is involuntary under the Fifth Amendment only if it is involuntary within the meaning of the Due Process Clause." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997) (en banc). For a statement to be involuntary under the Due Process Clause, it must be "extracted by … threats or violence," or "obtained by … direct or implied promises" or "the exertion of … improper influence." *Id*. Here, there were no implied promises to the defendant. Officers generally explained that his cooperation could help him, which is true. They never contradicted *Miranda* by telling him that his statements could not be used against him. *See United States v. Mashburn*, 406 F.3d 303, 309-10 (4th Cir. 2005) (advising defendant of penalties he faced if convicted and telling him the only way he could help himself was to accept responsibility and cooperate was not an impermissible "implied threat/promise"). The statements defendant cites are examples of moments in the interview where detectives were explaining how the defendant's cooperation could be helpful and could be brought to the attention of prosecutors. None were made in connection with the advisement of the *Miranda* rights, none contradict the *Miranda* warnings by telling the defendant his statements will not be used against him, and none require suppression.

### III. CONCLUSION

For the foregoing reasons, the United States respectfully submits that the Motion should be denied.

                                    Respectfully submitted,

                                    DANA J. BOENTE
                                  UNITED STATES ATTORNEY

By:            /s/
                                  John F. Butler
                                  Special Assistant United States Attorney
                                  Joseph E. DePadilla
                                  Andrew C. Bosse
                                  Assistant United States Attorneys
                                  Attorneys for the United States
                                  United States Attorney's Office
                                  101 West Main Street, Suite 8000
                                  Norfolk, Virginia 23510
                                  Office Number:      757-441-6331
                                  Facsimile Number:  757-441-6689
                                  E-Mail Address:     john.f.butler@usdoj.gov
                                                                  joe.depadilla@usdoj.gov
                                                                  andrew.bosse@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of May, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification to the following:

>Melinda R. Glaubke, Esq.
>Attorney for Defendant Arthur Santiful
>Slipow, Robusto & Kellam, P.C.
>2476 Nimmo Parkway, Suite 121
>Virginia Beach, VA 23454

>_____/s/_____
>John F. Butler
>Special Assistant United States Attorney
>Attorney for the United States
>United States Attorney's Office
>101 West Main Street, Suite 8000
>Norfolk, Virginia 23510
>Office Number: 757-441-6331
>Facsimile Number: 757-441-6689
>E-Mail Address: john.f.butler@usdoj.gov